Mr. McDevitt. Thank you, Your Honor. I may please the court. This appeal concerns two district court errors. First, the district court impermissibly resolved a factual dispute between the parties. Specifically, the court determined that the creation of a control track using beat maps, maps that are indisputably derived from music, is the same thing as the denoting a time, position, or location. The district court concluded that, on its own, and despite expert and technical evidence to the contrary, evidence that Ubisoft does not address in its opposition. Second, the district court applied a disclaimer that is not tethered to the actual distinctions Princeton Digital made to the patent office. Instead, at summary judgment, the court interpreted the claims in view of the accused products and revised the so-called disclaimer in view of the accused products. That's not correct. Any use of disclaimer must be based on the actual statements made to the patent office, not the accused products. Vitamix v. Basic Holding, a case on all fours with this case, involved the same problem. This court concluded that it was error for the district court to ignore the actual distinction made by the patentee and it was error for the district court to apply a disclaimer that expands the scope of disclaimer beyond the distinction actually made by the patentee when it's talked to the patent office. Princeton Digital's expert witness, who's indisputably one of orderly skill in the art, explained why the accused games meet each and every limitation of the asserted claims. Among other things, he cited testimony from Ubisoft game designers who equated the game's I'm sorry? I don't think I said anything. Okay. Among other things, Princeton Digital's experts equated and cited testimony from Ubisoft game designers who equated that the game's markers and beat maps correspond to beats in music, not time, position, or location. Ubisoft doesn't address that. Instead, Ubisoft points to But that disagreement is proof positive that summary judgment is not warranted here. The 129 patent suit contains two related elements. First, a control track element that corresponds to a music signal. And second, a virtual environment element, which is created in response to the control track. The statements that Princeton Digital made to the patent office in the context of Ubisoft's initiated IPR concerned the control track element, not the virtual environment element. In that IPR, Princeton Digital distinguished one approach to creating a control track, and notably, the control track was I'm sorry, Your Honor, go ahead. I'm sorry. I thought there was a question pending. The court did not make factual determinations through the lens of what person of ordinary skill in the art. Further, the court determined that the creation of a control track using music-driven markers and beat maps are the same thing as corresponding to time, position, or location. That's a factual finding that contradicts the record evidence in this case. And I point to Joint Appendix 22, excuse me, 20 and 21, where the factual findings were made by the district court and then adopted, the factual findings made by the magistrate judge in this case and then later adopted by the district court at summary judgment. The court did not make, impermissibly, the court did not make factual determinations through the lens of a person of ordinary skill in the art. Instead, the court determined that the creation of a control track using music-driven markers is the same thing as corresponding to time, position, and location. And the court admitted that while in some sense those markers correspond to the music, the court flipped the burden and determined that the, and flipped the claim construction and determined that the markers, though they correspond to the music, are within the scope of the disclaimer. Doing so while looking at not the accused products from the standpoint of a person of ordinary skill in the art, but from the standpoint of the district court, which is not permitted to do. Similarly, the court interpreted the prior, and that was the error that was committed in the Paul Corporation versus PTI Technologies case and later affirmed in cases afterwards. The court must interpret the prior art through the lens of one of ordinary skill in the art, not through its own understanding. Particularly at this point in the case, which is why this case was decided by this court. And there, the court determined that what the district court had done was looked at a disclaimer through the lens of its own, through its own understanding of the accused gains, and then applied it not based on statements made to the patent office, but expanded the scope of a disclaimer based on its understanding of the accused products. And that's error. That is something the court cannot do. The equation of a marker in a song to anything but the Ubisoft engineer listening to the song, creating it based on the beats, that's the point of the games, and that's the point of the games, and that's the reason why these games exist in the first place. They don't arbitrarily determine, these markers aren't arbitrarily or randomly selected. They're selected to correspond to points in the music, and that's exactly what the claims require. If you look at Joint Appendix 48, where the claims are for this case, we also dealt with it in our The claim itself, a claim element for recording the control track requires that the control information must correspond to a music signal. That's exactly what's done here. That's what the Princeton Digital's expert opined, that's what Ubisoft's engineers testified to, and that's what was cited in our expert reports. The fact that Ubisoft may Okay, anything further? Mr. McDowett? I'll reserve the rest of the time for rebuttal. Okay, thank you. Ms. Marriott? Thank you, and good morning. May it please the court? The district court correctly granted summary judgment in this case, finding a disclaimer of claims scope at claims construction, and applying that disclaimer to the undisputed facts. The judgment of non-infringement should be affirmed. At issue in the court's summary judgment ruling is essentially three components. First, the district court found that there was a disclaimer of claims scope. As far as I understand Princeton Digital's arguments on appeal, that remains undisputed. Princeton Digital concedes both now and on appeal that the district court correctly found that its own IPR statements disclaimed or surrendered claims scope. And it agrees that the scope of that disclaimer was properly defined in the court's claims construction order. Which I would just point the court there to appendix 3146, where that disclaimer is laid out. The existence of the disclaimer is not in dispute, and neither is the scope of the disclaimer. The second component of the district court's opinion is undisputed facts. This is also undisputed, that there are no actual factual issues about how the accused video games operate. During development of the game, a human listens to a song and presses a key on a keyboard, often it's an M or another letter, to make a marker at certain points in the song. The graphics, those markers are then put into a timeline. And graphics and other elements are positioned on that timeline in order to appear in relation to the time marker. Both at the district court and on appeal, it's undisputed that those graphics are tied to the markers. And at gameplay, they will show up at certain times in the song, timed out relative to the music. The music signal itself is not generating anything. All of this is undisputed, and the district court correctly found that no genuine issue of material fact existed about how the accused products work. That brings us to the third component of the district court's order, which is the district court's application of the disclaimer to the undisputed facts. This is the focus of Princeton's argument on appeal. And this is where I will focus. The district court got it right. The question is whether the alleged control information in the Ubisoft games, which Princeton contends are these beat markers that trigger the display of graphics at certain times, falls within the disclaimed claim scope. And the answer to that is yes. Yes, a beat is a time in a song. The beat markers are manually selected by humans to correspond to a particular time, position, or location in the song. And the graphics are positioned to appear at those markers. i.e. at a certain time in the song. During gameplay, the evidence is also undisputed that the music starts the timer for the markers. But the game doesn't care about what the content of the music is. In the context of the Rocksmith game, the developer testified that it could be white noise. The music simply isn't doing any work. Everything is appearing according to the timing of the markers. This is exactly what Princeton Digital disclaimed in the IPR. And the accused games fall within the scope of the disclaimer and not within the scope of the claims. Thus, Princeton Digital's infringement theory is clearly foreclosed by the claim construction. And the district court correctly found that the record evidence of how the accused products work brings those products within the scope of the disclaimer. In other words, the district court concluded correctly that no reasonable fact finder taking the evidence in the light most favorable to PDIC could find anything other than once the timer starts, the graphics are displayed irrespective of the audio content and summary judgment is appropriate. One of Princeton's arguments on appeal impacts the district court's analysis. There was no expansion or broadening or changing of the disclaimer between the claim construction order and the summary judgment order. And the district judge at the summary judgment hearing expressly confirmed on the record that he was applying the same claim construction, the same disclaimer that was found at claim construction. That is a distinction, an important distinction between the Vitamix case that Mr. McDavitt was discussing. Because there, there was a change in the scope of the disclaimer from the time of claim construction to the time of summary judgment. Where the district court found that the disclaimer in Vitamix was going to preclude all stirring in the context of that case. And that was too broad. It wasn't that there wasn't a disclaimer. It was just remanded to apply the original definition of the disclaimer that was found at claim construction. We don't have that issue in this case. The same disclaimer that was defined at claim construction was applied verbatim by the district court at summary judgment. And in the end, we haven't heard Princeton identify any actual deviations by the district court from the scope of that disclaimer that was found at claim construction. And in fact, there was none. In the brief, Princeton also argued that the word merely in the construction somehow impacts the scope of the disclaimer. It does not, and we did not hear argument on that today. It simply was not a word that characterizes the scope of the disclaimer. It was not given any importance or addressed by Princeton or its experts prior to summary judgment. And at bottom, the word merely simply does not impact the ultimate conclusion at summary judgment, which is that the markers that Princeton Digital points to as the control track are only based on the time within a sound recording and are not based on the content of the sound recording itself. Finally, Princeton suggests that it was not legally appropriate for the district court to grant summary judgment, and today characterizes the district court's application of the disclaimer to the undisputed facts as a factual issue. None of the cases that Princeton cites support this argument. And certainly, there are no cases that stand for the proposition that the district court could never grant summary judgment just because two experts disagree on the ultimate conclusion of infringement. To the contrary, the law has established that summary judgment is appropriate where no reasonable fact finder could find infringement, and that's exactly what the district court found in this case. That no reasonable fact finder could find infringement, and that because the court has questions with respect to the disclaimer and the arguments relating to the summary judgment order, I'll briefly touch on the secondary argument, which is the dismissal of the claims against the French entity Ubisoft Entertainment and the waiver argument made in the brief. Here, the district court, prior to granting summary judgment, entered an order dismissing the only claim that was asserted against Ubisoft Entertainment, which was one for indirect infringement. In its opening brief, in this appeal, Princeton did not raise any argument relating to the district court's dismissal of indirect infringement. And the law is well established that arguments not raised in the opening brief are waived. Unless this panel has additional questions, I will yield the remainder of my time. Okay. Thank you, Ms. Marriott. Mr. McDavid? Your Honor, let me address first the factual dispute. If you put a buoy in a channel to mark where in a port, that buoy is not there arbitrarily. The buoy is there because it corresponds to the water depth of a channel. Similarly here, the beat markers that are laid down by Ubisoft engineers are not there arbitrarily. They don't correspond to 30 seconds into a song or the song being played 10%. They are there because they correspond to the actual music. So when Ms. Marriott says there is no dispute over how the products work, there is no dispute as to how the beat markers are created. But there is a dispute between the parties as to whether or not those beat markers correspond to time, position, or location, or correspond to music. I guess it's undisputed to say that there is a factual dispute between the parties. But Princeton Digital's person of ordinary skill in the art looked at the evidence, looked at the testimony of Ubisoft engineers, and concluded, based on the undisputed and unrebutted testimony of Ubisoft engineers, that they listen to the music and create the beat markers because of the music. They are listening to the music, create the beat markers. So that's the factual dispute. Whether or not the facts that underlie how those markers get created, whether or not there is a dispute between the parties, that may be true. But the consequence of that and what those markers represent, they undisputedly correspond to music. And we know that because Ubisoft's game designers tell us so. Secondly, the scope of the disclaimer. We are not disputing the fact that there were statements that were made to the patent office in the context of the Ubisoft-initiated IPR. The IPR that was initiated, in fact, by Ubisoft France. But what was interesting about that, about the difference between the 2017 claim construction and then the summary judgment hearing, which happened three years later, was the disclaimer changed from being focused on what the actual statements made by Princeton Digital to the patent office, to what the accused products do. And that's what happened in Vitamix and that's the error. And to respond to Ms. Marriott's argument that the scope of the disclaimer didn't change, it changed, there's no dispute there was statements made to the patent office. But the disclaimer has to be based on what was actually said. And what was actually said was in the joint appendix 1053 and 1054 is the reproduction of what was actually said about Williams. And as I said before, it all relates to the control track. Finally, she made the point that the game doesn't care what the beat marker is. The beat marker could be responding to white noise. But that's actually not what happens. The beat marker corresponds to the music. In theory, perhaps the beat marker could be laid down by somebody to, in some theoretical portion of the creation of the game, the beat marker could be laid down arbitrarily. And that would fall within the scope of the disclaimer. But that's not what actually happens in the accused games. The beats which are laid down in the control track correspond to music, not time, not position, not location. And finally, Your Honor, I would just say the merely portion of the court's claim construction merely was a term that was in the claim construction originally because Ubisoft requested it be there. Not Princeton Digital, but Ubisoft requested it be there. And what's important about it, it's not that it merely was just excised from the claim construction between 2017 and the summary judgment. But the distinction is when the court omitted that word, it highlights the fact that the district court's summary judgment ruling expanded the scope of the actual statements made to the patent office, just like in the Vitamex case. The 2017 construction did include the word merely, and there's no dispute about that. Ubisoft, again, insisted that it include that. And in the actual colloquy, if you look at Joint Appendix 1053 and 1054, and we cite it in our case is a confusion between the music that is played during the game play and the control track that is used to create the graphics in the first place. The graphics do not exist without the control track. And the control track was created because a Ubisoft engineer listened to the music and created beat markers based on the beats in the music. That's the factual dispute. That was the evidence that was pointed to by a person of oriented skill in the art, and it was error for the district court to conclude otherwise. Thank you. Okay. Thank you, Mr. McDivitt. Thank you, Ms. Marriott. The case is submitted. That concludes our session for this morning. The Honorable Court is adjourned from day to day.